ANDRÉS CIRINO ET AL., Plaintiffs and Appellees, v. PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellant.

No. R-63-70.     Decided December 29, 1964.

*José A. Arabía* and *Carlos Santos Correa* for appellant. *W. Luyando Charneco* for appellees.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The appellees, Andrés Cirino and eleven others, sued appellant, Puerto Rico Water Resources Authority, alleging that as a consequence of the death of their brother Nicolás Cirino which occurred when he came in contact with a high tension electric cable property of appellant, which had fallen for reasons known to the latter, they suffered intense mental anguish and incurred expenses, which they estimated amounted to $75,000. In its answer, appellant denied being liable, but later on, in a pretrial conference, it accepted civil liability for the death of Nicolás Cirino although solely as to those appellees having a right to claim and who could prove the damages.

After a hearing, the trial court determined the family relationship existing between the appellees and the deceased; it decided that there existed family relationship between Nicolás Cirino and the appellees surnamed Osorio and Pizarro, that they recognized themselves as brothers and sisters and mutually helped each other in case of need for which reason said appellees, with the exception of two of them, suffered more than a transient grief as a result of the death of Nicolás Cirino. It further decided, that the deceased did not maintain family relations with his three brothers surnamed Cirino. Therefore, it sustained the complaint as to the seven plaintiffs, estimating the damages of each one of them in the amount of $500 plus $12 which Andrés Cirino contributed for the burial and funeral expenses, and dismissed it as to the other claimants.

Appellant assigns that the trial court committed three errors which we shall consider below:

1. The trial court erred in deciding that Nicolás Cirino, Pedro, and Silveria Pizarro, and Alfonso, Verena, Juana, Dionisia, Alberto, Alberta, and Santiago Osorio are Luis Pizarro's children and, therefore, half brothers of Nicolás Cirino, without sufficient evidence therefor.

The evidence for said relationship consisted in negative certificates of the vital statistics registry, baptism certificates, and oral testimony which appellant argues is not admissible evidence in this case, having timely objected its presentation as hearsay evidence.

Over appellant's objection, the baptism certificate of the deceased, that of Pedro Pizarro and that of Andrés Cirino were admitted in evidence as well as the negative certificates of the birth record of said persons, in addition to that of Silveria Pizarro. The baptism certificate of Angel Cirino was also impeached, but it was not admitted since his birth certificate was presented. In support of his objection to the negative certificates appellant cites the cases of *Cerecedo* v. *Medina*, 27 P.R.R. 750 (1919), and *González* v. *Rivera*, 42 P.R.R. 304, 306 (1931). The first case dealt with a complaint requesting the annulment of a tax sale. The ground to support the nullity consisted in the fact that certain mortgagees had not been notified of the attachment performed by the Treasurer, as prescribed by the Political Code. For the purpose of establishing this fact a certificate issued by the Treasurer of Puerto Rico was attached which established that it appeared from an inspection of the record of attachments and sale in question that certain mortgagees had not been notified. We said that the document on its face was clearly inadmissible and in support of said decision we cited the doctrine of the common law to the effect that in the absence of a statute a negative certificate by an officer will not be evidence of the nonappearance of a fact in the records, it being said that such negative proof requires oral testimony of the officer under oath that a search has been made and

its results. In *González, supra,* we reiterated this doctrine affirming that certificates of the Registry of Property, of the Treasurer of Puerto Rico, of the Department of Health, which at the bottom, are negative certificates, from which the conclusion is drawn that a certain person did not own any dairy in Carolina, merit no credence or consideration as evidence. *Cerecedo, supra,* as well as *González, supra,* dealt with certificates which although denying the existence of certain facts could not justify by themselves the non-existence thereof. In these cases the issuance of such certificates was not authorized by any law nor were the officers in question authorized by law to procure and preserve available the information in relation to which the negative certificates were requested.

The situation in the case at bar is distinguishable from the preceding ones, since § 38 of Act No. 24 of April 22, 1931 (24 L.P.R.A. § 1237)[1] is applicable. This provision not only authorizes the Secretary of Health to issue a certified copy of any birth, marriage or death certificate, which shall constitute prima facie evidence before all courts of justice of

---

[1] Said § 38 provides in part that:

"On petition of any interested person, the Secretary of Health, or a person by him authorized, shall furnish a certified copy of any birth, marriage or death certificate which has been recorded and registered in the general registry in accordance with the provisions of this Part. . . . A copy of the record of any birth, marriage or death, after being certified by the Secretary of Health or by any persons by him authorized, shall constitute prima facie evidence before all courts of justice of the facts set forth therein. For the search for any documents or information in the files of the Department of Health, *when no certified copy is issued,* the interested person shall pay the sum of fifty (50) cents in internal-revenue stamps for each hour or fraction thereof spent in searching for said document or information. Half of the stamp shall be adhered to and cancelled on the application *and the other half shall be adhered to and cancelled on the negative note issued.* Provided, further, That the Secretary of Health shall keep a record of all internal-revenue stamps cancelled *on copies of certificates and negative notes issued by him* or by his duly authorized representatives." (Italics ours.)

the facts set forth therein,[2] but. also to issue *certificates and negative notes.*

However, appellant maintains that said provision does not anticipate that such negative notes constitute prima facie evidence as provided in the case of certified copies.

Said negative notes are public documents pursuant to the provisions in § 1170 of the Civil Code (31 L.P.R.A., § 3271), in § 49 of the Law of Evidence (32 L.P.R.A. § 1783) and in § 45 of the Law of Evidence (32 L.P.R.A. § 1762).[3]

Section 69 of the Law of Evidence (32 L.P.R.A. § 1803(6)) provides that the official documents, in addition to those specifically referred to in this provision, may be proved by the original or by a copy certified by the legal keeper thereof.

■    Then we have that negative certificates to the effect that in the Registry of Vital Statistics or in the old Civil Registry certain entry or record does not appear, are expressly authorized by law, constitute official documents and serve the purpose of establishing the absence of a birth, marriage, or death in said registry. I-II Castán, *Derecho Civil Español, Común y Foral* 392 (1955); 27 *Enciclopedia*

---

[2] Section 1071(6) of Title 24 of the Rules and Regulations of the Commonwealth, at p. 142, authorizes municipal secretaries in charge of the books of the old Civil Registry of Puerto Rico to issue certificates of the acts and entries contained in said books, *or negatives if these do not exist,* upon payment of fees fixed by law. The same rule shall apply for the issuance of certified copies of the documents registered in the General Registry of Vital Statistics.

[3] Section 45 of the Law of Evidence provides:

"Public documents are such as are specified in Section 3271 of Title 31."

Section 1170 of the Civil Code provides that:

"Public instruments are those authenticated by a notary or by a competent public official, with the formalities required."

Section 49 of the Law of Evidence provides:

"Public documents are divided into four classes: ·

1. Laws
2. Judicial records
3. Other official documents
4. Public records kept in Puerto Rico, of public or private documents."

*Jurídica Española* 21. We decide, therefore, that the negative certificates in question, as well as the positive certificates, constitute prima facie evidence of the terms set forth since we must assume that in authorizing them the legislative assembly intended them to be as effective as any other official document, and it would not have legislated ineffectively, or performed a fruitless act. *Rosario* v. *Industrial Commission*, 85 P.R.R. 321, 326, (1962).

Appellant maintains that since said law provides that the positive certificates constitute prima facie evidence and fails to provide the same with respect to the negative certificates, the latter cannot constitute evidence of the same sort and, consequently, such certificate was not admissible in the absence of testimony on the stand of the search made and the results thereof.

The issuance of the aforementioned negative notes having been authorized by law, what additional warranty is offered by the fact that an officer testifies under oath that he has made a search of the books or records under his custody and the results thereof? Is he going to repeat what he has *stated* in a document which the law authorizes him to issue?

In relation to the principle that the officer should testify, Wigmore[4] points out that under the common law, the officer in charge or legal custodian lacked authority to certify that a specific document did not exist or that a particular entry or record was not found in the records under his custody. This situation made it necessary to present the testimony under oath that he had made a search and the results thereof. Wigmore comments that this rule partook of an excess of formality and imposed inconveniences and expenses where it was unnecessary. And, he adds: "It will some day be reckoned as one of the most stupid instances of legal pedantry in our annals." Wigmore emphasizes that the certificate of

---

[4] V Wigmore, On Evidence 752, § 1678 (3d ed.).

a custodian that has diligently searched for a document or an entry in the records under his custody and has been unable to find it ought to be satisfactory by itself for evidencing said fact.

In American Jurisprudence,[5] under the title "Administrative Records" it is stated that "records and reports of public officers made in the course of the discharge of their official duties are admissible in evidence not only as proof of the facts stated therein, but also to show the absence of entries or records and to prove, by reason of such absence, that such event did not take place or that something was not done."

Wigmore[6] classifies the official statements as an exception to the rule of hearsay evidence. It explains that said exception is justified by the principle of necessity (inconveniences in requiring the official's attendance) and because they are made in the discharge of a public duty under the sanction of an official oath.

■ It is obvious that the construction of the statute suggested by appellant is based on an isolated part of a provision of the law. Said manner of construing a statute is not acceptable, since it is incompatible with the doctrine which on several occasions we have applied to the effect that in construing an act it must be read and considered as a whole, not fractionally, and in order to find its meaning the court must bear in mind the purpose thereof. *Arroyo Merino* v. *Sugar Board*, 89 P.R.R. 610 (1963); *Álvarez & Pascual, Inc.* v. *Secretary of the Treas.*, 84 P.R.R. 463 (1962); *Eastern Sugar Associates* v. *Sugar Board*, 77 P.R.R. 354 (1954); *A. Roig Sucrs.* v. *Sugar Board*, 77 P.R.R. 324 (1954); *Petrovich* v. *Sec. of the Treasury*, 77 P.R.R. 152 (1954).

---

[5] 20 American Jurisprudence 862, § 1023.

[6] V Wigmore, On Evidence 512, § 1630 (3d ed.). See *"La Regla de la Prueba de Referencia y sus Excepciones"* Pedro Muñoz Amato, XIII *Revista Jurídica de la Universidad de P.R.* 90.

598

■ We shall consider jointly the question of the admissibility of the baptism certificate and the oral testimony concerning the family relationship between appellees Osorio and Pizarro and the deceased, since both are intimately connected. As to baptism certificates it is argued that they are not public documents, but rather hearsay evidence. Appellant opposed the admission of the testimony "because it understood that in an action for damages it could not be introduced and because, if it could, the provision in § 250 of the Civil Code (31 L.P.R.A. § 983)[7] made it inadmissible since plaintiffs had not introduced any evidence whatsoever to show to the trial court why the rule prescribed in said section should not be complied with." As to the baptism certificates, we anticipate that they certify the act which leads to its execution and the date thereof, that is, of the administration of the baptism and the date thereof and nothing else. *People v. Vargas*, 69 P.R.R. 355 (1948); *Aguayo et al. v. García*, 11 P.R.R. 263 (1906).

■ It is also convenient to reiterate the doctrine established by this Court to the effect that the substantive cause of action to claim damages for the death of a person for the fault or negligence of another is § 1802 of the Civil Code (31 L.P.R.A. § 5141). *Correa v. Puerto Rico Water Resources Authority*, 83 P.R.R. 139 (1961); *Hernández v. Fournier*, 80 P.R.R. 94 (1957). The scope of § 1802 has been gradually extended until in *Correa, supra*, we decided that it should not be limited to the *ius sanguinis*, that is, that a person may claim and obtain compensation for moral damages actually suffered as a result of the death of another caused by the

---

[7] Section 250 of the Civil Code provides:

"The records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a litigation is instituted before the courts."

fault or negligence of a third person even if claimant is not related to the deceased by kinship. Certainly, as to moral damages, it is essential to prove deep moral sufferings and anguish, and a passing affliction would not give rise to an action for damages. *Hernández, supra.* In the case at bar the trier, in admitting said evidence of family relationship stated that: "As to them, [the claimants, children of the same father—the deceased] the family relationship may be taken in consideration so that, in addition to other facts, it may be considered to determine whether they actually and effectively suffered damages." Farther on in the same decision, said judge added: "[i]n the present case it was not sought to establish the family relationship between the plaintiffs and the deceased in the sense usually understood by law. It merely sought to prove the family relationship so that it be considered as a fact that may shed light or connection with the damages suffered by plaintiffs." We agree that for these purposes it was admissible, as long as it is shown, as we do below, that the records of the Registry of Vital Statistics could not be supplied since the births of the parties had not been recorded, as shown by the negative certificates referred to, or for failure to report them in the certificates issued, since the name of some of the claimants' father does not appear in the Registry. The case of *Mercado* v. *American Railroad Co.*, 61 P.R.R. 222 (1943) is not in conflict with this conclusion. On the contrary, it holds that in an action brought by the relative on his own behalf the best evidence is a certificate of the Civil Registry—now the birth certificate. Once this is established, § 250 of the Civil Code, as we shall immediately see, comes into play.

Appellant alleges that the birth certificate being the best evidence of the civil status pursuant to said § 250 of the Civil Code, it was not proper to admit the baptism certificates and the testimony on the family relationship, unless some

reason were adduced within the exceptions enumerated in said section, which was not done.

In *Camacho* v. *Balasquide*, 19 P.R.R. 564 (1913), in considering § 320, now 250, of the Civil Code we said:

"In regard to section 320 of the Civil Code and the proper construction to be given thereto, it may be regarded as an elementary law, and that the legal principle therein involved is modified by the Law of Evidence. The certificate of inscription made in the civil registry in regard to the birth of the child *cannot* be considered as an incontrovertible document. . . . Such being the case, the plaintiff could properly offer *oral proof* to show that the contents of the same *were incorrect.*" (Italics ours.)

In *Estate of Félix Matos*, 63 P.R.R. 972 (1944) we construed the provision "when litigation is instituted before the courts," which is one of the exceptions of the rule provided in § 250 that "The records in the Registry shall be evidence of the civil status."[8] We decided in this case that oral evidence and secondary documentary evidence of the existence of a marriage contracted outside of Puerto Rico are admissible in the absence of a marriage certificate, since a litigation was instituted in relation to the existence of said marriage.

In *Burgos et al.* v. *Medina et al.*, 35 P.R.R. 485 (1926), we simply reiterated the rule of § 250 of the Civil Code to the effect that the secondary evidence, in this case oral evidence, is not admissible to prove the civil status of a person, *when no reason has been shown*, pursuant to the provision in said § 250, to offer such secondary evidence.

Section 327 of the Spanish Civil Code, equivalent to § 250 of our Civil Code, has been construed in the sense that sup-

---

[8] On the concept of civil status, see, I S. Santamaría, *Comentarios al Código Civil* 358, 359; I-II Castán, *Derecho Civil Español, Común y Foral* 369, 370; I Colin and Capitant, *Derecho Civil* 805 *et seq.*; XV Seix, *Enciclopedia Jurídica Española* 109; VIII Seix, *Nueva Enciclopedia Jurídica Española* 862 and 886.

plementary evidence of the civil status is admissible when the facts in relation to said status do not appear from the registry as well as when a litigation is instituted before the Courts in relation to said status. I Castán, *Derecho Civil Español, Común y Foral* 391; V Scaevola, *Código Civil* 688 (5th ed. 1943); I Pedreira, *Código Civil a Través de la Jurisprudencia* 400; I S. Santamaría, *Comentarios al Código Civil* 362; 27 Seix, *Enciclopedia Jurídica Española* 23; I Colin and Capitant, *Derecho Civil* 805 and 840 (1952 ed.).

In the case at bar the baptism certificates of certain appellees were offered in evidence subsequent to the presentation of negative certificates which established that in the Registry of Vital Statistics there did not appear any evidence of their birth. And the oral evidence on the family relationship of certain appellees to the deceased was offered when there did not appear in the Registry the name of the father of certain appellees, according to the contents of the corresponding certificates. Under said circumstances, we decided that the baptism certificates as well as the oral evidence constituted secondary evidence of the civil status of certain appellees admissible in evidence in the absence of evidence in the Registry of Vital Statistics in relation to said status, pursuant to the provision of § 250 of the Civil Code.

■ 2. The trial court erred in granting to appellee Dionisia Pizarro Osorio $500 as compensation for the moral sufferings sustained as a result of the death of Nicolás Cirino. We agree. Said appellee lived in New York. She came to Puerto Rico when notified of the event and went to the novenary. It does not appear from the evidence how long she had lived in New York and what the relation was to the deceased. The deep moral sufferings and anguish suffered by Dionisia Pizarro due to the loss of her half brother do not appear from the evidence, as required by the rule established in *Hernández, supra. Cf. Infante* v. *Leith*, 85 P.R.R. 24, 34 (1962).

3. The trial court did not err in ordering appellant to pay attorney's fees, but under the circumstances of this case we hold that $250 is a just and reasonable amount for attorney's fees.

In view of the foregoing the judgment will be modified as to the points previously stated, and as thus modified it will be affirmed.